IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| iTALENT, INC., and dWISE SOLUTIONS AND SERVICES PVT LTD. (INDIA),  )<br>)<br>Plaintiffs,  )<br>)<br>v.  )<br>)<br>RAZOR INSIGHTS, LLC,  )<br>)<br>Defendant.  ) | Case No. 4:14-CV-1157 |

### PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

COME NOW Plaintiffs, iTalent, Inc. ("iTalent") and dWise Solutions and Services PVT Ltd. (India) ("dWise" and collectively with iTalent, "Plaintiffs") and respectfully move this Court, pursuant to Federal Rule of Civil Procedure 65(a), to enter a Preliminary Injunction restraining Defendant Razor Insights, LLC ("Razor"), from violating the restrictions to which it is subject under the Development Agreement (defined herein) or from benefitting from prior violations. Specifically, Plaintiffs seek an order prohibiting Razor[1] from (a) benefitting from its ongoing breach by using Plaintiffs' employees to perform additional software development work for Razor and (b) soliciting and hiring any more of Plaintiffs' employees. In support of its Motion, Plaintiffs state as follows:

---

[1] Razor shall include Razor and any company affiliated with Razor, including Razor's "to-be-formed India subsidiary," believed to be Razor Insights Technology Pvt. Ltd., as referenced in the April 22, 2014 letter, and as contemplated by the Development Agreement as a potential transition whereby certain employees of Plaintiffs would become employees of Razor, if acceptable to the employees involved.

**I.      Background**

1.      This Court has jurisdiction over the parties to enter the relief requested herein. (Verified Complaint ("Complaint"), ¶¶ 1-7.)

2.      iTalent, an IT services company providing software consulting services and software services, including designing, developing, installing, and supporting software code and database, and dWise, a company providing software products and solutions, including designing, developing, installing, and supporting cloud based software code and databases, are sister companies with dWise providing its development center in India to the relationship. (Complaint, ¶¶ 2-4.)

3.      Razor provides health IT solutions to rural, community, and critical access hospitals. One such service is its software platform ONE-EHR, a program that allows U.S. hospitals the ability to store electronic health records (EHR) in the cloud. (Complaint, ¶ 5.)

4.      In late 2010, iTalent and dWise entered into an undated development agreement with Razor (hereinafter the "*Initial Development Agreement*"). A copy of the Initial Development Agreement is attached to the Complaint as Exhibit 1. (Complaint, ¶ 1.)

5.      The Initial Development Agreement was ultimately superseded on or about July 18, 2011, by the current development agreement (hereinafter, the "*Development Agreement*"). A copy of the Development Agreement is attached to the Complaint as Exhibit 2. (Complaint, ¶¶ 1 and 22.)

6.      Under the Development Agreement, Plaintiffs agreed to develop and enhance features of the ONE-EHR software for Razor. (Complaint, ¶ 23.)

7.      Plaintiffs provided these services through the use of their India-based software engineers (called offshore resources) and at a rate below their customary rates. (Complaint, ¶

26.)

    8.    The Development Agreement contained a reciprocal non-solicitation provision in Section 4.3 titled "Non-Solicitation." That section provides in relevant part:

> <u>Non-Solicitation</u>.  During the Term of this Agreement and for one (1) year thereafter, Developer shall not directly or indirectly recruit, solicit, discuss or knowingly allow its employees, associates or other affiliates to solicit for hire, contract work or any kind of employment or engagement, any employee or personnel of Company. Likewise, Company shall not directly or indirectly recruit, solicit, discus, encourage, retain or knowingly allow its employees associates or other affiliates to solicit for hire, contract, work or any kind of employment or engagement, any employee or personnel of Developer to leave his or her employment on consultancy of the Developer or to join the Company or any other person or entity as an owner, principal, co-venturer, stockholder, partner, director, officer, member, trustee, creditor, guarantor, independent contractor, consultant, representative, agent or employee, or attempt to do or assist in doing any of the foregoing . . . .Violation of this clause will amount to breach of contract and early termination fee clause will apply besides the claim for damages under equity and law by the Developer against the Company.

(Complaint, ¶ 36.)

    9.    The Development Agreement contained a provision in Section 7.4 titled "Injunctive Relief." That section provides in relevant part:

> <u>Injunctive Relief</u>.  Company and Developer agree that any default under or breach of Article 4 or Section 7.1 or 7.7 of this Agreement will result in immediate and irreparable injury and harm to Company, which shall have, in addition to any and all remedies of law and other consequences under this Agreement, the right to an injunction, specific performance or other equitable relief to prevent the default under or breach of this Agreement.  The foregoing remedies shall in no way limit any other remedies which Company may have, including without limitation, the right to seek monetary damages.

(Complaint, ¶ 39; Exhibit 2, § 7.4.)

    10.    The Development Agreement contained an attorney's fees provision in Section 7.5 titled "Costs of Litigation." That section provides in relevant part:

> If any action is brought by either party to this Agreement against the other party regarding the subject matter of this Agreement, the prevailing party shall be entitled to recover, in addition to any other relief granted, reasonable attorney fees, costs, and expenses of litigation.

(Complaint, ¶ 40.)

11. The Development Agreement was set to expire on May 31, 2014, unless renewed by the parties. (Complaint, ¶ 45.) As such, Plaintiffs engaged in discussions regarding an extension of the Development Agreement and/or the transition of services through training or hiring of Plaintiffs' offshore resources. (Complaint, ¶ 46.)

12. During such discussions, Plaintiffs made several verbal and informal proposals to address the transition; whereas Razor routinely suggested that it would consider such proposal and respond, but failed to do so. (Complaint, ¶ 47.) While discussing the transition, Plaintiffs' representatives sought and obtained assurances that Razor would not solicit or hire Plaintiffs' employees. (Complaint, ¶ 48.)

13. On April 21, 2014, Plaintiffs provided alternative offers to Razor - an offer that covered a ramp down effort (as of April 21, 2014, Plaintiffs had 77 resources on the ONE-EHR team) that involved steadily decreasing the number of offshore resources to 25 by December 2014. (Complaint, ¶ 49.)

14. Pursuant to Section 2.6, Plaintiffs also offered to dedicate resources to assist in the transition of the technology or transfer anyone from the ONE-EHR team, except for certain select individuals, to an entity of Razor's choosing, assuming such team members were willing to do so. (Complaint, ¶ 50.)

15. But on April 22, 2014, Razor, through its counsel, provided formal notification that Razor did not wish to renew or extend the Development Agreement past May 31, 2014. A copy of Razor's April 22, 2014 Termination Letter is attached to the Complaint as <u>Exhibit 3</u>. (Complaint, ¶ 51.)

16. Instead, Razor proposed a new transition of services whereby (a) the software and services developed by Plaintiffs for Razor and (b) certain identified employees of the Plaintiffs, would be transitioned to a "to-be-formed India subsidiary of Razor" for undisclosed consideration. (Complaint, ¶ 52; Exhibit 3.)

17. The Plaintiffs were amenable to transitioning the software and technology pursuant to the terms of the Development Agreement. (Complaint, ¶ 53.)  Because Razor's proposal completely ignored and otherwise invalidated the previously negotiated transitions clauses, including Sections 2.6 and 2.7 of the Development Agreement; however, Plaintiffs rejected Razor's proposal. (Complaint, ¶ 54.)

18. Plaintiffs allowed Jerry Dennany, Razor's chief technology officer, and Hasmukh Patel, a Razor representative, access to dWise's facilities on several occasions in 2013 and 2014. (Complaint, ¶ 55.)

19. Upon learning that these two individuals were at dWise's office to identify and solicit dWise's employees that were important for Razor's ongoing software development, Razor was asked to withdraw them from the dWise facility and the individuals were subsequently asked not to return.  (Complaint, ¶ 56.)

20. Beginning on May 10, 2014 and continuing through May 13, 2014, dWise received resignation notices from approximately 25 of its employees, all of whom worked in support of the Development Agreement (supporting development efforts for Razor and ONE-EHR).  (Complaint, ¶ 57.)

21. These employees were directly or indirectly solicited by representatives of Razor and/or a "to-be-formed India subsidiary of Razor" or an affiliate of Razor to work on the ONE-EHR software for Razor. (Complaint, ¶ 58.)

22. Mr. Dennany and Mr. Patel's solicitation efforts proved successful as these employees (i.e., approximately 25 in all) left their employment at dWise and upon information and belief now work for Razor or a company affiliated with Razor (and continue to provide the same or similar services that Plaintiffs would have provided to Razor). (Complaint, ¶ 61.)

23. Mr. Dennany and Mr. Patel scouted Plaintiffs' employees and selected those who they felt were the most qualified and skilled employees to continue to work on the ONE-EHR project. (Complaint, ¶ 62.)

24. On May 15, 2014, Plaintiffs contacted Razor's executive team, including Reed Liggin, Edward Nall, Michael McKenzie, and Jerry Dennany, via an email titled "Request for a fair proposal" related to Razor's blatant violation of the Development Agreement in an effort to amicably resolve the parties' outstanding issues. A copy of the email is attached to the Complaint as Exhibit 4. (Complaint, ¶ 63.)

25. W. Reed Liggin, Razor's President, acknowledged to Madhu Hittuvalli, iTalent's co-founder, that Razor was involved in the hiring of the employees that resigned over the four day period referenced above and that he had no power to prevent the solicitation/hiring because he did not call the shots for Razor. (Complaint, ¶ 66.)

26. Also, as communicated by Mr. Liggin to Mr. Hittuvalli, Bluff Point Associates, a venture capital group that invested $11,000,000 into Razor, directed Razor (through its directors on Razor's board) to poach Plaintiffs' employees in direct breach of the Development Agreement, as opposed to arriving at a mutually acceptable transition plan as contemplated by Sections 2.6 and 2.7 of the Development Agreement. (Complaint, ¶ 71.)

27. Additionally, on or about May 19, 2014, Riyad Rasheed (CEO of dWise) communicated with Kraig Brown, Razor's Chief Executive Officer, wherein Mr. Brown

acknowledged Razor's wrongdoing with respect to the Development Agreement. (Complaint, ¶ 72.)

28.     On May 20, 2014, Mr. Brown sent a formal proposal to Mr. Rasheed, a proposal that would have trampled on Plaintiffs' previously negotiated transition plan contained in the Development Agreement. (Complaint, ¶ 73.)

29.     Razor continues to openly violate the non-solicitation provision of the Development Agreement by employing former employees of Plaintiffs to work on the ONE-EHR project and there are concerns that Razor may continue to solicit employees of Plaintiffs that worked on the ONE-EHR project, including those that may have refused the prior advances by or on behalf of Razor

## II.     Plaintiffs Are Entitled to Injunctive Relief

30.     Plaintiffs have complied with all material obligations and performed all obligations of the Development Agreement. (Complaint, ¶ 97.)

31.     Razor has materially breached the Development Agreement by, amongst other items, hiring Plaintiffs' employees in direct contravention of Section 4.3 of the Development Agreement. (Complaint, ¶ 98.)

32.     Section 4.3 forbids Razor **directly or indirectly** from recruiting, soliciting, discussing or knowingly allowing its employees, associates or other affiliates to solicit for hire, contract work or any kind of employment or engagement, any employee or personnel of Plaintiffs for a period of one year. (Complaint, ¶ 99.)

33.     Razor through its "to-be-formed India subsidiary of Razor" and/or affiliated company" has admittedly hired approximately thirty employees of Plaintiffs to continue to service and develop the ONE-EHR software. (Complaint, ¶ 100.)

34. Razor is, as set forth above and as set forth in Plaintiffs' Memorandum in Support of its Motion for Preliminary Injunction, taking actions in violation of its contractual agreement and Plaintiffs' common and statutory law rights. (Complaint, ¶ 101.)

35. Should Razor not be restrained from further actions in violation of these obligations, Plaintiffs will suffer substantial injury, including but not limited to, damage to the current business relationships that Plaintiffs has with its clients and potential clients, as well as current, former, and future employees. (Complaint, ¶ 102.)

36. Razor's actions have injured and will continue to injure Plaintiffs' business and property. (Complaint, ¶ 103.)

37. The injury is and continues to be immediate and irreparable, and an award of monetary damages alone could not fully or adequately compensate Plaintiffs for the damage to their business and property. (Complaint, ¶¶ 104-105.)

38. As such, Plaintiffs lack an adequate remedy at law and immediate injunctive relief is therefore appropriate. (Complaint, ¶ 106-107.)

39. Indeed, Razor already acknowledged that "any default under or breach of Article 4 [which includes Section 4.3]…will result in immediate and irreparable injury and harm" which would entitle Developers to "the right to an injunction…" (Complaint, ¶ 108; Exhibit 1, Section 7.4.)

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs iTalent and dWise respectfully request the Court:

(a) Enter after a hearing before this Court, a preliminary and permanent injunction that enjoin and restrain Razor and all those in active concert with them from:

i. Directly or indirectly recruiting, soliciting, discussing, or

knowingly allow its employees, associates, or other affiliates to solicit for hire, contract work of any kind of employment or engagement of any personnel of Plaintiffs' or to join Razor or any company affiliated with Razor as an owner, principal, co-venturer, stockholder, partner, director, officer, member, trustee, creditor, guarantor, independent contractor, consultant, representative, agent or employee, for a period of one year from the date Razor hired Plaintiffs' employees (or longer to the extent equitably tolled);

      ii.      Taking any other action that would be inconsistent with the Development Agreement; or

      iii.      In the alternative, enforcing the Development Agreement to the extent allowable under applicable law.

(b)      Require Razor to pay all costs of enforcement and collection of any and all remedies under the Development Agreement, including reasonable attorneys' fees and costs; and

(c)      Award Plaintiffs such other and further legal and equitable relief as the Court may deem just and proper in the premises.

Respectfully submitted,

POLSINELLI PC


By: /s/Christopher C. Swenson_____
    CHRISTOPHER C. SWENSON (#44947)
    PETER A. CORSALE ( #57220)
    100 S. Fourth Street, Suite 1000
    St. Louis, MO 63102
    314.889.8000
    Fax No: 314.231.1776
    cswenson@polsinelli.com
    pcorsale@polsinelli.com

ATTORNEYS FOR PLAINTIFFS
iTALENT, INC., and dWISE SOLUTIONS
AND SERVICES PVT LTD. (INDIA)

2

## CERTIFICATE OF SERVICE

   I hereby certify that on the 30th day of July, 2014, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

J. Bennett Clark
Bryan Cave LLP
211 N. Broadway, Suite 3600
St. Louis, Missouri 63102


                 /s/Christopher C. Swenson